**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| MOORE ESSENTIALS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:23-cv-03924 |
| | ) | |
| PATRICK A. BARBOUR, | ) | |
| PATRICK A. BARBOUR, | ) | |
| d/b/a MILLIONAIRE RECRUITER CLUB, | ) | |
| TANNER WHITE, SEARCH NOW, LLC, | ) | |
| FLEXFORCE INDUSTRIAL and | ) | |
| MILLIONAIRE RECRUITER CLUB, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S AMENDED VERIFIED COMPLAINT**

Plaintiff Moore eSSentials Corporation (hereinafter, "Plaintiff"), through the undersigned counsel, states and alleges for its causes of action against Defendants Patrick A. Barbour, Patrick Barbour d/b/a Millionaire Recruiter Club ("MRC"), Tanner White, Search Now, LLC, FlexForce Industrial and Millionaire Recruiter Club, LLC ("MRC, LLC"):

**PARTIES**

1.       Plaintiff Moore eSSentials Corporation is an Illinois corporation with a principal place of business at 995 Countryside Lane, Carol Stream, Illinois 60188.

2.       Upon information and belief, Defendant Patrick A. Barbour is a natural person and is a citizen of Fort Bend County, Texas.

3.       Upon information and belief, Defendant Patrick Barbour d/b/a Millionaire Recruiter Club is an online educational platform/business headquartered in Fort Bend County, Texas.

1

4.      Upon information and belief, Defendant Tanner White is a natural person and is a citizen of Travis County, Texas.

5.      Defendant SearchNow, LLC is a Tennessee limited liability company with a principal place of business at 1684 Adswood Road, Clarksville, Tennessee 37042.

6.      Defendant FlexForce Industrial is a corporation with a principal place of business at 9900 Spectrum Drive, Austin, Texas 78717.

7.      Defendant Millionaire Recruiter Club, LLC is a limited liability company with a principal place of business at 1719 Delta Oaks Drive, Missouri City, Texas 77459.

8.      By agreement of the parties, Thomas Pasternak of Akerman, 71 South Wacker Drive, 47th Floor, Chicago, IL 60606, has agreed to accept service on behalf of all defendants.

## JURISDICTION AND VENUE

9.      Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-8 above as if fully set forth herein.

10.      This Court has federal subject matter jurisdiction over Defendants pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under the Lanham Act (15 U.S.C. §1051 *et seq*.).

11.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are so related to the claims brought by Plaintiff under federal law such that they form part of the same case or controversy under Article III of the United States Constitution.

12.      This Court has personal jurisdiction over the parties to this action because Defendants' intentional and tortious acts were committed in this jurisdiction, because Defendants breached a contract entered into in the State of Illinois, and because Plaintiff resides in this jurisdiction, pursuant to 18 U.S.C. §2334(a).

2

13.     More specifically, this Court has personal jurisdiction over Defendants because this action arises, in whole or in part, from Defendants' knowing and intentional breach of certain statutory and common law obligations owed to Plaintiff arising under both federal and Illinois law, as well as contractual obligations arising under and pursuant to the terms and conditions of Plaintiffs' training, which were agreed to by Defendants before the course began. Defendants' unlawful actions occurred in and have caused injury to Plaintiff within the State of Illinois.

14.     This action involves claims in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

15.     Venue is proper by virtue of 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this Court's judicial district, and the Defendants are subject to this Court's personal jurisdiction with respect to this civil action.

16.     Defendants are engaged in interstate commerce.

## GENERAL ALLEGATIONS AS TO ALL COUNTS

### Moore eSSentials, Tamkin and Thibeault

17.     Moore eSSentials is owned by husband and wife, Tricia Tamkin and Jason Thibeault.

18.     Tamkin has been involved in the recruiting and headhunting industry for over 30 years. Thibeault has been involved in the industry since 2010.

19.     While actively owning and managing their recruiting firm, Tamkin and Thibeault were constantly looking for ways to source unique and better job candidates more efficiently using the internet.

20.     While many recruiters simply look to traditional internet sources such as Indeed, LinkedIn and job boards to find candidates, Tamkin and Thibeault were constantly developing

search techniques and programs to give them an edge in the recruiting industry either by working more efficiently or, mostly, finding passive candidates that were not on Indeed, LinkedIn and job boards actively searching for work.

21.     The techniques developed by Tamkin and Thibeault allowed them to find job candidates that other recruiters and search firms simply could not find. In turn, Tamkin and Thibeault enjoyed significant success in the recruiting industry.

22.     As their recruiting businesses and careers continued to thrive, Tamkin and Thibeault were often asked to teach breakout sessions or even be keynote speakers at industry meetings. Tamkin and Thibeault have presented to the recruiting industry at over 40 conferences in the last 13 years.

23.     After years of providing other recruiters surface level insight into their methodology at industry seminars, Tamkin and Thibeault began putting together a program to actively train recruiters on, among other things, the sourcing methods that made them so successful.

24.     Tamkin and Thibeault have been teaching recruiters their program methodologies and materials since 2010.

25.     Although Tamkin and Thibeault teach numerous courses on topics ranging from Recruiting Business Development to Artificial Intelligence, one of the programs proving the most successful and effective are the materials developed and taught in eSourcing eSSentials. eSourcing eSSentials includes use of Boolean logic and specialized search strings developed by Tamkin and Thibeault to define and refine internet searches for recruiters. Use of the materials and methodologies from the eSourcing eSSentials course allows students to dig much deeper than the

search techniques that most recruiters are using to source job candidates and, in doing so, gives students of Moore eSSentials a competitive advantage over other recruiters and recruiting firms.

26.     Tamkin and Thibeault first began teaching the eSourcing eSSentials program live in locations such as San Francisco, New York and Toronto.

27.     As people began to turn to the internet for training and educational opportunities, Tamkin and Thibeault began teaching the eSourcing eSSentials program though online webinars and on-demand videos. The online eSourcing eSSentials webinars began as early as 2012 with on-demand videos starting in the years thereafter.

28.     Today, those programs and materials are owned by Moore eSSentials and continue to be taught by Tamkin and Thibeault.

**Barbour, White, SearchNow, MRC, FlexForce and MRC, LLC
exposure to Moore eSSentials' proprietary materials**

29.     According to his website, Barbour made his first entry into the world of recruiting and staffing in early 2017 when he founded SearchNow and/or FlexForce. Barbour is a resident of the State of Texas but spends a significant amount of time in Brazil, his wife's native country.

30.     White is a recruiter employed by SearchNow and/or FlexForce. Upon information and belief, White is a resident of the State of Texas.

31.     SearchNow is a staffing firm that, upon information and belief, provides recruiting and staffing solutions to its clients. SearchNow is a Tennessee company, whose headquarters are in the State of Texas.

32.     FlexForce is a staffing firm that, upon information and belief, provides recruiting and staffing solutions to its clients. Flexforce is a Texas company with headquarters in the State of Texas.

33. MRC is an online training company that first started doing business in February or March of 2023. According to its website, MRC trains individuals on "how to start, grow and scale your own profitable recruiting business."

34. Upon information and belief, Barbour converted MRC to MRC, LLC as of May 30, 2023, by forming MRC, LLC with the State of Texas Secretary of State.

35. Upon information and belief, much, if not all, of MRC's and MRC, LLC's training is done online via use of YouTube videos and/or through a private Facebook group that is invite only. MRC charges students as much as $8,000 for access to its courses.

36. On February 2, 2023, Jackie Gibson, a longtime student of Moore eSSentials, sent an email to Tamkin inquiring as to whether Barbour had reached out to Moore eSSentials about the upcoming eSourcing eSSentials class. Specifically, Ms. Gibson's email provided: "Did Patrick Barbour get in touch with you yet about the esourcing class? He has a team of 9 people so I suggested he take the course himself first and then decide if he wants to send his team through." See Ex. A.

37. Shortly thereafter, on February 16, 2023, Barbour signed up to take the eSourcing eSSentials course, which Moore eSSentials offered from February 22nd to March 20, 2023.

38. Barbour held himself out to be a representative of SearchNow when enrolling for the eSourcing eSSentials course.

39. The eSourcing eSSentials live course was purchased by Barbour for $2,500. Moore eSSentials also offers students the opportunity to purchase a video of the entire course for $5,000, which is to be used by students to refresh topics taught during the course. Barbour did not purchase the course video; however, he admits to instructing White to video tape the entire course for later use.

40.     When Barbour signed up for the eSourcing eSSentials class, he agreed to be bound by the Terms and Conditions of Moore eSSentials.  See Ex. B. The Terms and Conditions provide, among other things, that the license to the materials granted is (a) "for personal, non-commercial transitory viewing only"; (b) that the licensee agrees not to "use the materials for any commercial purpose, or for any public display" and (c) not to remove any copyright or other proprietary notations for the materials.

41.     Furthermore, the Moore eSSentials website, where Barbour signed up for the eSourcing eSSentials course provides:

> "The Site and its original content, features and functionality are owned by Moore eSSentials and are protected by international copyright, trademark, patent, trade secret and other intellectual property or proprietary rights laws. Any attempt to steal them by any means to include, but not limited to, URL manipulation or general sneaking about will be met with cold, hard justice. All classes, QAs, calls and so forth are intellectual property considered confidential information only to be used for the purposes of being a better recruiter and are not to be redistributed in any way, ever."

42.     According to Barbour, he was unavailable on the dates of the eSourcing eSSentials course. Unbeknownst to Moore eSSentials, Barbour instructed White to attend the eSourcing eSSentials course in his place. Barbour describes White as his top recruiter at SearchNow and/or FlexForce.

**Barbour, White, SearchNow, MRC, FlexForce and MRC, LLC's
unauthorized use of Moore eSSentials' proprietary program and materials**

43.     Although neither Barbour nor White purchased the video of the eSourcing eSSentials course, White, at the direction of Barbour, surreptitiously recorded the entire eSourcing eSSentials course.

44.     Upon information and belief, the videos of the entire eSourcing eSSentials course were, at the direction of Barbour, saved on the system of SearchNow, FlexForce and/or to a Loom

account affiliated with Barbour, White, SearchNow, MRC, FlexForce or MRC, LLC so they could be used by defendants for commercial purposes in violation of the Terms and Conditions and the copyright.

45. Upon information and belief, White either taught Barbour what he learned in the eSourcing eSSentials course or provided Barbour and other defendants access to the videos White surreptitiously took of the course without permission from or compensating Moore eSSentials for the use of its materials.

46. White and/or Barbour also taught the eSourcing eSSentials course material to other recruiters at SearchNow and/or FlexForce without permission from or compensating Moore eSSentials for the use of its materials.

47. In an email dated June 2, 2023, Barbour admitted using the unauthorized video and materials from the eSourcing eSSentials course to train three SearhNow and/or FlexForce recruiters. He identified those employees as White, Joy Torres and Jun Catacata.

48. Additionally, Barbour and/or other representatives of SearchNow, MRC, FlexForce or MRC, LLC, including but not limited to, White or Jackie Gibson, used the eSourcing eSSentials program and materials for commercial purposes by teaching the materials to MRC's and/or MRC, LLC's paid clients for profit and passing the information off as their own.

49. In fact, in an email dated May 15, 2023, and in an effort to direct attention and liability away from White, Barbour admitted his plan to inappropriately use the eSourcing eSSentials course materials when he noted "[White] had no idea I was going to use small portions of [the course materials] for the MRC training material."

50. Less than three weeks after White took the eSourcing eSSentials course from Moore eSSentials and provided the video/course materials to Barbour, MRC began advertising

and teaching many of the key concepts and materials from eSourcing eSSentials to MRC's paid clients without Moore eSSentials' permission and without compensating Moore eSSentials for the use of its proprietary materials. For instance, on March 30, 2023, Barbour and MRC posted a 24-minute video on MRC's YouTube channel and within a free and public Facebook Group with over 500 members, entitled "Alpha Candidate Sourcing Strategy Secrets." The vast majority of the information in that video is taken directly from the eSourcing eSSentials course that was attended by White only days earlier.

51.     Despite being asked to remove the "Alpha Candidate Sourcing Strategy Secrets" video from MRC's and/or MRC, LLC's free YouTube channel on numerous occasions, as of June 19, 2023, it remained posted on the YouTube channel of MRC and/or MRC, LLC and available to anyone for free.

52.     As of June 19, 2023, the "Alpha Candidate Sourcing Strategy Secrets" video from MRC's and/or MRC, LLC's free YouTube channel was the fifth most popular video of the thirty-one videos posted. See Ex. C.

53.     Upon information and belief, the eSourcing eSSentials class content was originally taught by Barbour. However, at some point, Barbour hired Jackie Gibson to teach the eSourcing eSSentials class content to clients of MRC and/or MRC, LLC.

54.     Gibson is a longtime student of Moore eSSentials. Gibson has taken a number of Moore eSSentials courses over the years, including eSourcing eSSentials in 2019, 2022 and February 2023.

55.     Gibson never opted to purchase videos of the Moore eSSentials training until the February 2023 eSourcing eSSentials class. This is the class Gibson took just weeks before agreeing to teach eSourcing eSSentials materials to Barbour, MRC and/or MRC, LLC clients.

9

56.     One of the significant concepts of the eSourcing eSSentials course is the use of Boolean search strings to find possible job candidates. Included in the course materials are Boolean search strings developed specifically by Tamkin and Thibeault for the recruiting industry.   The review of the Facebook Live videos of MRC and/or MRC, LLC shows Jackie Gibson teaching the exact same Boolean search strings she learned from attending the eSourcing eSSentials course in 2018, 2019 and again in 2023, just days before she started teaching the materials to MRC and/or MRC, LLC clients.

57.     Gibson clearly recognizes Moore eSSentials' value and its owners' talents. Indeed, Gibson posted a testimonial about Tamkin on her LinkedIn, which is also included on Moore eSSentials' website. Gibson's testimonial, which she removed in the last few days when this dispute arose, provides:



58.     Among the proprietary concepts and materials Barbour, White, MRC, Gibson and MRC, LLC stole from eSourcing eSSentials and are teaching directly to MRC and/or MRC, LLC clients without permission or authority of Moore eSSentials include, but are not limited to: Meet The Team Searches, Image Search for resumes and Image Search URL Manipulation, Base & Face

structure of a search string, Sourcing Strategy Development, to include differentiation between Exclusive or Competitive, the proprietary concept of Muddy Water, Rapport as the Absence of Difference, and a myriad of other techniques and searches taught in the eSourcing eSSentials program.

**Defendants' theft of Intellectual Property is not limited to Moore eSSentials.**

59.     Apparently, defendants' theft of intellectual property is not limited to Moore eSSentials. In a post on MRC's Facebook page on February 12, 2023, Barbour noted: "I've been teaching someone else's program and improving it the best I can, but that program is extremely basic and very beginner level, very novice, very scratch the surface, superficial." See Ex. D.

60.     When asked about this quote by Moore eSSentials' counsel, Barbour advised that quote "was about Ben Nader and not [Tamkin]."

61.     Ben Nader is a well-known trainer of recruiters. Unfortunately, he passed away in April of 2023 and defendants have been admittedly "teaching [his] program."

### COUNT I
**False Designation of Origin and Passing Off in Violation of the Lanham Act**
**15 U.S.C. §1125**
**(Plaintiff against all Defendants)**

62.     Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-61 above as if fully set forth herein.

63.     Defendants deliberate and intentional misappropriation of Plaintiff's proprietary material and passing it off as their own as alleged herein constitute use in commerce of material that is likely to deceive as to the origin of Defendants' commercial activity, in violation of 15 U.S.C. 1125(a)(1).

64.     Defendants' unauthorized use of Plaintiff's proprietary material constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the

origin of Defendants' recruitment materials by creating the false and misleading impression that Defendants created such materials. In the Alpha Sourcing Secrets video posted to the Mastermind Group, Barbour's free Facebook Group, and YouTube, Barbour says at 44 seconds, "it's all very brand new stuff for me to share in a coaching setting, but it is absolutely the crux of how my team and I have been able to, to build seven figures consistently over the last several years. Without this knowledge, without this strategy and game, we just would not have been able to do it." Then Barbour proceeds to spend the next 23 minutes teaching the eSourcing eSSentials content he learned in the weeks prior.

65.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered, continues to suffer, and/or is likely to suffer damage to its proprietary content, business reputation, and goodwill that money cannot compensate.

66.     Unless enjoined, Defendants will continue to use Plaintiff's proprietary material and will cause irreparable damage to Plaintiff for which Plaintiff has no adequate remedy at law.

67.     Plaintiff is entitled to an injunction precluding Defendants and, as applicable, Defendants' other officers, members, agents, servants, representatives, and employees, and all persons acting in concert with them, from using Plaintiff's proprietary materials in connection with Defendants' business and the promotion, marketing, offer to sell, or sale of any of Defendants' products or services.

68.     Plaintiff is further entitled to recover from Defendants the actual damages Plaintiff has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

69.     Defendants' unauthorized use of Plaintiff's proprietary materials has been intentional and willful.

70. The intentional and willful nature of Defendants' acts is evidenced by the blatant similarities apparent in transcripts of Plaintiff's and Defendants' presentations to consumers.

71. Because the intentional and willful nature of Defendants' wrongful acts constitute a violation of 15 U.S.C. §1125(a), Plaintiff is entitled to an award of: (a) Defendants' profits; (b) actual damages; and (c) the costs of this action under 15 U.S.C. 1117(a).

## COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505 et seq.**
**(Plaintiff against all Defendants)**

72. Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-71 above as if fully set forth herein.

73. Defendants undertook a deceptive act or practice when, on February 16, 2023, they agreed to the terms and conditions of Plaintiff's eSourcing eSSentials Live! course which prohibited Defendants from using Plaintiff's materials for a commercial purpose and from modifying or copying the materials. Later, including but not limited to, March 20, 2023, Defendants then subsequently used material from the course for a commercial profit and passed Plaintiff's proprietary material off as their own.

74. Defendants intended that Plaintiff rely on that deceptive act or practice by agreeing to the terms and conditions of Plaintiff's course.

75. Defendants' deceptive act or practice occurred in the course of trade and commerce, as Defendants agreed to the terms and conditions of Plaintiff's course in connection with purchasing the course, and then later used Plaintiff's content to teach others within SearchNow and/or FlexForce or passed Plaintiff's content off as their own to consumers who purchased MRC's course.

76.     Plaintiff suffered actual damages in the form of loss of revenue, loss of potential customers, and attorney's fees and costs.

77.     Plaintiff's actual damages occurred as a direct and/or proximate result of Defendants' deceptive act or practice.

### COUNT III
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510 et seq.
### (Plaintiff against all Defendants)

78.     Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-77 above as if fully set forth herein.

79.     Defendants, in the course of their business, vocation or occupation, willfully engaged in a deceptive trade practice under the Uniform Deceptive Trade Practices Act ("UDTPA") when they purchased Plaintiff's eSourcing eSSentials Live! course, agreed to the terms and conditions of the purchase, surreptitiously recorded the course, and then later, without the authorization of Moore eSSentials, provided and taught Plaintiff's content to other employees or independent contractors of SearchNow and/or FlexForce that had not paid for the course and did not know of its source or origin.

80.     Defendants, in the course of their business, vocation or occupation, also willfully engaged in a deceptive trade practice under the UDTPA when they purchased Plaintiff's eSourcing eSSentials Live! course, agreed to the terms and conditions of the purchase, surreptitiously recorded the course, and then later, without the authorization of Moore eSSentials, provided and taught Plaintiff's content to customers of MRC and/or MRC, LLC that had not paid for the course and did not know if its source or origin.

81.     Defendants, in the course of their business, vocation or occupation, also willfully engaged in a deceptive trade practice under the UDTPA when they purchased Plaintiff's eSourcing

14

eSSentials Live! course, agreed to the terms and conditions of the purchase, surreptitiously recorded the course, and then later, without the authorization of Moore eSSentials, provided and /or taught Plaintiff's content to individuals and/or the public in general that had not paid for the course and did not know if its source or origin through YouTube, Facebook, and other online platforms.

82.     The actions of Defendants described herein, all of which were done in the course of their business, vocation or occupation, violated the UDTPA in the following manner:

(a)  passed off goods or services of Moore eSSentials as their own;

(b)  caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c)  caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Moore eSSentials;

(d) used deceptive representations in connection with goods or services;

(e) represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they did not have or that Defendants had a sponsorship, approval, status, affiliation, or connection that he, she or it did not have; and/or

(f) engaged in other conduct which similarly created a likelihood of confusion or misunderstanding.

83.     Plaintiff suffered actual damages in the form of loss of revenue, loss of potential customers, and attorneys' fees and costs.

84.     Plaintiff's actual damages occurred as a direct and/or proximate result of Defendants' willfully deceptive trade practice.

## COUNT IV
### Common Law Fraud
### (Plaintiff against all Defendants)

85.     Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-84 above as if fully set forth herein.

86.     Defendants made a false statement of material fact when, by agreeing to the terms and conditions accompanying their purchase and viewing of Plaintiff's eSourcing eSSentials Live! course, they agreed not to use Plaintiff's materials for a commercial purpose, not to modify or copy the materials, and not to transfer the materials to another person.

87.     Defendants knew this statement was false because, by making recordings of Plaintiff's course, they intended to wrongly utilize the materials in Plaintiff's course for teaching others within SearchNow and/or FlexForce and to pass plaintiffs course materials off as their own to MRC customers.

88.     Defendants intended to induce Plaintiff to act upon their false statement by agreeing to the terms and conditions of the course, thus indicating to Plaintiff that it could proceed with teaching the course to Defendants.

89.     Plaintiff reasonably relied on Defendants' false statement as Defendants' acceptance of the terms and conditions was part of the terms of purchase of the course.

90.     Plaintiff has suffered damages directly and/or proximately resulting from its reliance on Defendants' false statement in the form of loss of revenue and loss of potential customers.

## COUNT V
### Breach of Contract – Terms and Conditions of Purchase Agreement
### (Plaintiff against all Defendants)

91.     Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-90 above as if fully set forth herein.

92.     The parties entered into a valid and enforceable contract whereby, in exchange for financial consideration, Plaintiff agreed to share its proprietary course materials with Defendants, and Defendants agreed to the terms and conditions that accompanied the purchase of the course.

93.     Plaintiff performed its part of the contract when it granted Defendants access to the course and shared its proprietary course materials with Defendant White when he attended the course from February 22, 2023 to March 20, 2023.

94.     Defendants breached this contract when they began to use Plaintiff's proprietary materials and information commercially and for profit.

95.     As a direct and/or proximate result of Defendant's breach, Plaintiff suffered actual damages in the form of loss of revenue and loss of potential customers.

## COUNT VI
### Unjust Enrichment/Quantum Meruit
### In the Alternative
### (Plaintiff against all Defendants)

96.     Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-95 above as if fully set forth herein.

97.     Defendants appreciated a benefit from the commercial use and profit of Plaintiff's proprietary course materials to the detriment of Plaintiff.

98.     Defendants, through the acts described herein, accepted and retained said benefit under inequitable and/or unjust circumstances in that Defendants were able to train employees and/or agents of SearchNow and/or FlexForce without cost and reaped additional profits and

gained new clients through the commercial use of Plaintiff's proprietary course materials, and in doing so, deprived Plaintiff of such profit and potential clients.

99.     As a result of Defendants' acts, Plaintiff was forced to engage the undersigned law firm, and incur legal fees and costs related to this matter, in an attempt to require Defendants to: (1) cease and desist teaching Plaintiff's course materials and passing such materials off as their own; and (2) require Defendants to compensate Plaintiff for the damages it incurred as a result of Defendants' use of Plaintiff's proprietary materials.

### COUNT VII
**Conversion**
**(Plaintiff against all Defendants)**

100.     Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1-99 above as if fully set forth herein.

101.     Copyright protection attached to the course materials the moment they were expressed in a tangible form, which occurred when Plaintiff's course materials were created.

102.     As the originator, creator, and copyright holder of the materials for the eSourcing eSSentials Live! course, Plaintiff has a legal right to the ownership of those materials.

103.     Defendants wrongfully, and without Plaintiff's authorization, assumed control, dominion, and/or ownership of Plaintiff's course materials when they recorded and/or copied the copyrighted course materials and began teaching them in their own courses to third parties and passing off Plaintiff's copyrighted material as their own.

104.     Not only did Defendants relocate Plaintiff's materials by recording them during their attendance of the course, but Defendants committed independent acts of conversion by repurposing the materials, passing them off as their own, and teaching and/or selling material attributable to Plaintiff to their own employees and/or agents as well as third-party customers.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor against defendants Patrick A. Barbour, Patrick A Barbour d/b/a Millionaire Recruitment Club, Tanner White, Search Now, LLC, FlexForce Industrial and Millionaire Recruiter Club, LLC, for all allowable damages, including as follows:

a)      Compensatory and special damages to be determined at trial;

b)      Statutory penalties and liquidated damages;

c)      Punitive and exemplary damages;

d)      Pre- and post-judgment interest;

e)      Reasonable attorneys' fees and costs; and

f)      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Moore eSSentials Corporation hereby demands a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, by and through counsel, designates Chicago, Illinois as the appropriate place for trial of this matter.

Respectfully submitted,

    /s/ *Timothy J. Klein*
Timothy J. Klein, IL Bar No. 6180949
LAW OFFICE OF TIMOTHY J. KLEIN
290 Springfield Dr., Suite 155
Bloomingdale, IL 60108
(630) 893-5200 Ext. 103
kleinlaw@aol.com

/s/ James D. Myers
James D. Myers  (*Pro Hac Pending*)
MYERS LONGHOFER, LLC
7200 W. 132nd Street, Suite 190
Overland Park, KS 66213
(913) 586-6300
(913) 586-6304 – Fax
jim@myerslonghofer.com

## **VERIFICATION**

I, Tricia Tamkin, declare:

1. I am an owner and the president of Moore eSSentials Corp.

2. I verify that the facts stated in the foregoing Amended Verified Complaint have been assembled by myself and counsel for Moore eSSentials Corp. and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

Executed in Carol Stream, IL on July 24, 2023

Moore eSSentials Corp.

By: Tricia Tamkin
Its: President