IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOORE ESSENTIALS CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> PATRICK A. BARBOUR, PATRICK A. BARBOUR, d/b/a MILLIONAIRE RECRUITER CLUB, TANNER WHITE, SEARCH NOW, LLC, FLEXFORCE INDUSTRIAL, AND MILLIONAIRE RECRUITER CLUB, LLC <br><br> Defendants. | Case No. 1:23-cv-03924 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendants Patrick A. Barbour, Patrick A. Barbour d/b/a Millionaire Recruiter Club, Tanner White, SearchNow, LLC, FlexForce Industrial, and Millionaire Recruiter Club, LLC (collectively, "Defendants") hereby submit the following Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint ("Complaint") for lack of personal jurisdiction and for failure to state a claim.

**I.     INTRODUCTION**

This action arises from Plaintiff Moore Essentials Cooperation's ("Plaintiff") allegations that Defendants, after being exposed to Plaintiff's teachings of certain recruitment and headhunting strategies, began to teach the same tactics to their clients. Even accepting all of the allegations contained in Plaintiff's Amended Complaint as true, however, the majority of

72271625;1

Plaintiff's causes of action fail to state a claim upon which relief can be granted and should be dismissed accordingly.

Specifically, Counts I-III for violation of the Lanham Act and Illinois unfair trade practice statutes are preempted by the Copyright Act. Count II and III also fail to meet basic requirements for claims under the relevant Illinois statutes. Count IV alleges fraud against all Defendants, but the facts alleged only concern a purported misrepresentation by Barbour. Count V impermissibly asserts breach of contract against Defendants who were not party to any contract with Plaintiff. Count VI, a cause of action for unjust enrichment/quantum merit, is merely a request for relief, not an independent cause of action. Finally, Count VII only alleges theft of intellectual property, which cannot be the subject of conversion under Illinois law.

Additionally, Plaintiff's Amended Complaint fails to allege facts sufficient to establish this Court has personal jurisdiction over any of the Defendants, all of whom are located outside of Illinois and have not engaged in purposeful activities directed at Illinois or otherwise availed themselves of the privilege of conducting business in Illinois.

## II. FACTUAL BACKGROUND[1]

Plaintiff, an Illinois corporation, is a recruiting firm owned by husband and wife, Tricia Tamkin and Jason Thibeault. (ECF No. 11, ¶ 17). Over their years in the industry, Tamkin and Thibeault developed techniques that allowed them to identify job candidates that were not reached by traditional search methods. *Id.*, ¶ 20, 21. Plaintiff eventually began putting together a program to train recruiters on various things, including Tamkin and Thibeault's candidate identification techniques, and have been teaching the program since 2010. *Id.*, ¶ 23, 24. One of Plaintiff's most successful and effective programs was the materials and methods taught as part

---

[1] Defendants' citation to the Amended Complaint reflects the Motion to Dismiss standard and is not an admission of any of the allegations contained in the Amended Complaint or waiver of any defenses. Defendants reserve all defenses under the applicable law.

72271625;1

of the eSourcing eSSentials program. *Id.*, ¶ 25.

Defendant Patrick Barbour ("Barbour") entered the recruiting and staffing industry when he founded two staffing firms, SearchNow, LLC ("SearchNow") and FlexForce Industrial ("FlexForce"), in early 2017. *Id.*, ¶ 29, 31, 32. Defendants SearchNow and Flexforce are headquartered in Tennessee and Texas, respectively. *Id.*, ¶ 5, 6. Defendant Tanner White ("White") worked for SearchNow and/or FlexForce. *Id.*, ¶ 30. Both White and Barbour are residents of Texas. *Id.*, ¶ 2, 4.

Defendant Patrick Barbour d/b/a Millionaire Recruiter Club ("MRC") is an online training company headquartered in Texas that began in March 2023 that provides online training to individuals on how to start, grow and scale their business. *Id.*, ¶ 3, 33. MRC's training is done predominantly through YouTube videos and a private, invite-only Facebook group that charges users for access to courses. *Id.*, ¶ 35. MRC was converted to Defendant Millionaire Recruiter Club, LLC ("MRC, LLC") as of May 30, 2023. *Id.*, ¶ 34. MRC, LLC has its principle place of business in Texas. *Id.*, ¶ 7.

On February 16, 2023, Barbour, as a representative of SearchNow, signed up to take the eSourcing eSSentials course which Plaintiff offered from February 22, 2023 to March 20, 2023. *Id.*, ¶ 37, 38. Barbour purchased the live course and did not purchase the video recording of the course. *Id.*, ¶ 39. When signing up for the course, Barbour agreed to be bound by the Terms and Conditions of Moore eSSentials which, among other things, granted a license to the course materials "for personal, non-commercial transitory viewing only" and stated that the licensee agrees not to "use the materials for any commercial purpose, or for any public display." (*Id.*, ¶ 40; ECF No. 11-2, Exhibit B). The Terms and Conditions explicitly stated any claim regarding Plaintiff's website would be governed by New York law. (ECF No. 11-2). Plaintiff's website,

where Barbour signed up for the course, also stated:

> The Site and its original content, features and functionality are owned by Moore eSSentials and are protected by international copyright, trademark, patent, trade secret and other intellectual property or proprietary rights laws. Any attempt to steal them by any means to include, but not limited to, URL manipulation or general sneaking about will be met with cold, hard justice. All classes, QAs, calls and so forth are intellectual property considered confidential information only to be used for the purposes of being a better recruiter and are not to be redistributed in any way, ever.

(ECF No. 11, ¶ 41). Barbour was unavailable on the dates of the eSourcing eSSentials course and instructed White to attend the course instead. *Id.*, ¶ 42. Barbour instructed White to record the course although Barbour did not pay for a video recording of the course. *Id.*, ¶ 43. Videos of the eSourcing eSSentials course were then saved on the system of SearchNow, FlexForce, and/or to a Loom account affiliated with the Defendants. *Id.*, ¶ 44. White taught Barbour what he learned from the course or provided access to the videos of the eSourcing eSSentials course to the other Defendants. *Id.*, ¶ 45. White and Barbour also taught the course material to other recruiters at SearchNow and/or FlexForce without compensating Plaintiff. *Id.*, ¶ 46. Barbour and/or other representatives of SearchNow, MRC, FlexForce, or MRC, LLC used Plaintiff's program and course materials by teaching the materials to MRC's and/or MRC, LLC's paid clients and passing the information off as their own. *Id.*, ¶ 48. Three weeks after White took the eSourcing eSSentials program, MRC began advertising and teaching many of the key concepts and materials from Plaintiff's program to paid clients without Plaintiff's permission and without compensating Plaintiff, including posting a video on MRC's YouTube channel and in a free and public Facebook group. *Id.*, ¶ 50.

Three weeks after taking the February 2023 eSourcing eSSentials class, Barbour hired Jackie Gibson to teach content from the eSourcing eSSentials program to clients of MRC and/or MRC, LLC. *Id.*, ¶ 53, 55. Gibson had been a long-time student of Plaintiff's. *Id.*, ¶ 54. Gibson

taught in MRC and/or MRC, LLC's Facebook Live sessions a tactic called "Boolean search strings," which was developed by Tamkin and Thibeault and taught in Plaintiff's courses attended by Gibson. *Id.*, ¶ 56. Barbour, White, MRC, and MRC, LLC taught other tactics from Plaintiff's courses to MRC and/or MRC, LLC's clients without Plaintiff's permission or compensating Plaintiff. *Id.*, ¶ 58.

### III. MEMORANDUM OF LAW AND CITATION OF LEGAL AUTHORITY

#### A. Legal Standard

On a motion to dismiss under Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure, "the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true." *Kohl v. Murphy*, 767 F. Supp. 895, 897 (N.D. Ill. 1991); *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022), cert. denied sub nom. *Sheehan v. Breccia Unlimited Co.*, 143 S. Ct. 1750, 215 L. Ed. 2d 650 (2023). Courts will not strain, however, to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint. *See Coates v. Illinois State Bd. of Ed.,* 559 F.2d 445, 447 (7th Cir. 1977). Moreover, courts are not required to accept legal conclusions either alleged or inferred from pleaded facts. *Davis v. Frapolly*, 747 F. Supp. 451, 452 (N.D. Ill. 1989). A motion to dismiss under Rule 12(b)(6) is granted when the facts alleged will not entitle the plaintiff to judgment on the claim asserted under any circumstance. *Adams v. City of Chicago*, 865 F. Supp. 445, 446 (N.D. Ill. 1994). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," including consideration of a motion to dismiss. Fed. R. Civ. P. 10(c).

#### B. Counts I-III Are Preempted by the Copyright Act

The Amended Complaint labels Count I as a claim for "False Designation of Origin and Passing Off in Violation of the Lanham Act," under 15 U.S.C. 1125(a)(1). The allegations supporting Count I simply do not add up to a false origin claim.

5

A false designation of origin claim under the Lanham Act requires a likelihood of confusion as to the origin of goods, services, or commercial activity. As summarized by the United States Supreme Court, "the phrase 'origin of goods' in the Lanham Act … refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S. Ct. 2041, 2050 (2003). In *Dastar*, the plaintiff alleged that defendant marketed and sold a video set series about World War II entitled "Campaigns" as defendant's own product without acknowledging it almost exclusively relied upon plaintiff's earlier television series. *Id.* at 31. The Supreme Court held that the defendant, as the producer of the videotapes made available to the public, was the "origin" of the goods, not plaintiff, as the creator of the underlying work the defendant had allegedly copied. *Id.* at 31-32. In so holding, the Supreme Court specifically explained, "in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 32. "*Dastar* made it clear that there is no claim under the Lanham Act for copying, revising, and using a copyright-able work. Such claims exist if at all under copyright law." *Francois v. Jack Ruch Quality Homes, Inc.*, No. 03-1419, 2006 WL 2361892, at *13 (C.D. Ill. Aug. 14, 2006). Allegedly unauthorized copying and use of copyrightable work is exactly what Plaintiff claims here and such claims are preempted by the Copyright Act.

Per the allegations of the Amended Complaint, Defendants were the "origin" of their own video content for purposes of a claim under the Lanham Act. (ECF No. 11, ¶ 50, 56). Indeed, Plaintiff does not allege that Plaintiff created any of the actual video content put out by Defendants in their videos posted to YouTube or on Facebook or that Defendants took

recordings of Plaintiff's actual video courses and passed those videos off as their own. Instead, the facts alleged in support of Count I claim that Defendants took Plaintiff's ideas, namely recruiting concepts and tactics from Plaintiff's video courses, and used that information in Defendants' own courses and video offerings. *Id*. In other words, Plaintiff contends it was the originator of the recruiting techniques and strategies shared in its eSourcing eSSentials course that were then used by Defendants in creating their own video content. Such allegations do not equate to a claim under the Lanham Act.

"The right question, *Dastar* holds, is whether the consumer knows who has produced the finished product." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005). Under the allegations of the Amended Complaint, Defendants' clients would know it was Defendants, not Plaintiff, who produced the actual video content they viewed. As Count I is really concerned with the alleged taking of Plaintiff's ideas and information about recruiting strategies and not passing off a tangible good to consumers as Defendants' product, it is not a proper Lanham Act claim. Thus, Count I should be dismissed.

With regards to Counts II and III, which both assert claims under Illinois unfair competition and deceptive practices claims, Illinois resolves such claims according to the principles set forth in the Lanham Act. *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). As a result, Counts II and III based on any "passing off" allegations are similarly preempted by the Copyright Act and should be dismissed.

### C. Counts II and III Fail to Allege a Sufficient Connection to Illinois

Counts II and III, asserting claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), respectively, should also be dismissed on the basis that they do not sufficiently allege that the purported unfair acts occurred primarily and substantially in Illinois, as required

7

under the law. *BCBSM, Inc. v. Walgreen Co*., 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021) ("The ICFA 'does not have extraterritorial effect,' and therefore applies only 'if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois.'"); *see also Miche Bag, LLC v. Be You, LLC,* No. 11-CV-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011) (holding claims under UDTPA must occur "primarily and substantially" within Illinois). Factors considered in analyzing sufficient ties to Illinois under ICFA include: (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed. *BCBSM,* 512 F. Supp 3d at 856-57. Factors relevant to whether a transaction prompting a claim under UDTPA occurred "primarily and substantially" in Illinois include "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Miche,* 2011 WL 4449683 at *6.

The Amended Complaint only asserts, at best, two tenuous connections to Illinois. First, that Plaintiff is an Illinois corporation with its principle place of business in Illinois and second, the legal conclusion that Barbour's agreement to the Terms and Conditions for the online eSourcing eSSentials program constituted entering into a contract in Illinois. (ECF No. 11, ¶ 17, 40). The Terms and Conditions for the program, however, were not even subject to Illinois law but were explicitly to be governed by New York law. (ECF No. 11-2, ¶ 8). A multitude of facts alleged by Plaintiff confirm its claims cannot be considered to have occurred "primarily and

72271625;1

substantially" in Illinois. For instance, the Defendants are alleged to reside, have headquarters in, are incorporated in, or have principle places of business outside of Illinois. *Id.*, ¶ 2-7. Additionally, the Amended Complaint is absent of any allegations that the Defendants taught courses to Illinois residents specifically, marketed to Illinois consumers specifically, made any deceptive statements in Illinois, or were present in Illinois when they viewed Plaintiff's video courses, agreed to the Terms and Conditions, or even accessed Plaintiff's website. The weak connections to Illinois alleged fail to qualify as unfair acts occurring "primarily and substantially" in Illinois. As neither the ICFA nor the UDTPA have extra-territorial effect, Counts II and III should be dismissed.

### D. Count II Does Not Involve the Required Deception in "Trade and Commerce"

To state a claim under § 2 of ICFA, a plaintiff must plead: (1) a deceptive act or practice; (2) intent on the defendant's part that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce." *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997). "Trade" and "Commerce" are defined to mean "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated…" 815 Ill. Comp. Stat. Ann. 505/1. Per the Amended Complaint, the deceptive act alleged is Barbour's agreement to and breaching of the Terms and Conditions of taking the eSourcing eSSentials course, not any deceptive statement in Defendants' advertisement, offering for sale, sale, or distribution of Defendants' services or products. (ECF No. 11, ¶ 40, 73).[2] Thus, Count II fails to involve deception in the course of conduct involving

---

[2] As discussed above, Plaintiff has not asserted a valid "reverse passing off" claim because Defendants did not take Plaintiff's video courses and repackage them as their own. *Dastar*, 539 U.S. at 23 (noting

9

"trade or commerce" and should be dismissed accordingly.

### E. Count III Fails to Allege a Misrepresentation to the Public

Count III fails to allege any deceptive act done toward the general public. Instead, Plaintiff only alleges Defendants committed deceptive acts against Plaintiff individually. "Implicit (if not explicit) within the twelve enumerated subsections of § 2 of the UDTPA is that for a violation to occur, the defendant must make some form of a representation (or do something) to the public (or a potential buyer) regarding a good or service." *Lynch Ford*, 957 F. Supp. at 147. Defendants are not alleged to have misrepresented anything about their courses beyond passing off the content as their own, a preempted claim, as discussed above. Moreover, the deception alleged was a representation to Plaintiff who was in the position of a seller, not a buyer. (ECF No. 11, ¶ 40, 79-81).

### F. Count IV Fails to Plead Facts that Could Support Fraud Against Any Defendant Except Barbour

Under Illinois law, there are five elements of common-law fraud with the first element being that a false statement of material fact is made. *Wernikoff v. Health Care Serv. Corp.*, 376 Ill. App. 3d 228, 233, 877 N.E.2d 11, 16 (2007). Within that first element, there are three components, the first being the defendant must have made a misrepresentation. *Id.* While Count IV is alleged against all Defendants, the only Defendant alleged to have actually made any misrepresentation is Barbour when he agreed to the Terms and Conditions to participate in the eSourcing eSSentials course. (ECF No. 11, ¶ 40) ("When Barbour signed up for the eSourcing eSSentials class, *he* agreed to be bound by the Terms and Conditions of Moore Essentials.") (emphasis added). As no other Defendant aside from Barbour is alleged to have made a false misrepresentation, Count IV should be dismissed against all Defendants except Barbour.

---

had defendants merely repackaged plaintiff's videotapes as defendant's own then plaintiff could have had a claim under the Lanham Act).

**G.     Count V Fails Against Defendants Who Were not Party to a Contract with Plaintiff**

Count V asserts a claim for breach of contract, broadly contending "the parties entered into a valid and enforceable contract whereby, in exchange for financial consideration, Plaintiff agreed to share its proprietary course materials with Defendants and Defendants agreed to the terms and conditions that accompanied the purchase of the course." (ECF No. 11, ¶ 92). This is the exact type of legal conclusion masquerading as a fact that courts are not required to accept when considering a motion to dismiss and the type of "general" and "vague" allegations with no factual specifics that impermissibly treat defendants as a collective whole that are insufficient to overcome a motion to dismiss. *Davis*, 747 F. Supp. at 452; *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009).

Upon reviewing the facts in the Amended Complaint, only Barbour is alleged to have agreed to the Terms and Conditions associated with purchasing the eSourcing eSSentials course. (ECF No. 11, ¶ 40). As has been noted by the United States Supreme Court, "it goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 764, 151 L. Ed. 2d 755 (2002); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996) (finding claim that a non-party to a contract can breach that contract is "ludicrous"). As Defendants, aside from Barbour, are not alleged to have been parties to any contract with Plaintiff, they cannot be found to have breached a contract with Plaintiff. Count V should be dismissed against all Defendants except for Barbour accordingly.

**H.     Count VI Is a Request for Relief, Not a Cause of Action**

Count VI, which is pled in the alternative, is for unjust enrichment/quantum merit. "Unjust enrichment is not a separate cause of action under Illinois law; it a condition brought about by fraud or other unlawful conduct, including violations of the ICFA or IPFSA." *Mullen*

11

*v. GLV, Inc.*, 444 F. Supp. 3d 883, 901 (N.D. Ill. 2020). This should have been pled as a request for a relief, not a cause of action. Thus, Count VI should be dismissed.

I. **Count VII Fails as Intangible Property Cannot be Converted**

To prove conversion in Illinois, a plaintiff must establish that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011). Illinois courts do not recognize an action for conversion of intangible property. *Am. Nat. Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (7th Cir. 2008). Claims for theft of "ideas" and "intellectual property" have been dismissed at the motion the dismiss stage accordingly. *See Michael v. Bell*, No. 11-CV-4484, 2012 WL 3307222, at *4 (N.D. Ill. Aug. 13, 2012); *Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 781 (N.D. Ill. 2017) (finding digital file insufficiently tangible property and that plaintiffs must "in fact plead that a 'tangible object' was taken from them").

Here, Plaintiff's Amended Complaint only alleges theft of intellectual property through "record[ing] and/or cop[ying] Plaintiff's course materials." (ECF No. 11, ¶ 103). Plaintiff has failed to allege that Defendants took any tangible object from Plaintiff. Even if Plaintiff's Amended Complaint were rewritten to allege Defendants took possession of tangible copies of Plaintiff's property, because Plaintiff does not allege that it was ever unable to access its own materials there can still be no valid claim for conversion. *Ho v. Taflove*, 696 F. Supp. 2d 950, 956 (N.D. Ill. 2010), *aff'd sub nom. Seng-Tiong Ho v. Taflove*, 648 F.3d 489 (7th Cir. 2011) ("To the extent plaintiffs argue that defendants' possession of physical copies of plaintiffs' works constitutes conversion, their claim fails as there are no allegations or evidence indicating that plaintiffs did not have copies of those materials available to them at all times."). As Illinois

courts do not recognize conversion of intellectual property, like the courts did in *Michael* and *Sheridan,* Count VII for conversion should be dismissed.

      **J.**      **The Court Lacks Personal Jurisdiction Over All Defendants**

The Court lacks personal jurisdiction over all Defendants and the entire action should be dismissed accordingly pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. "When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists." *In re Sheehan*, 48 F.4th at 520. Even accepting the nominal jurisdiction related allegations of Plaintiff's Amended Complaint as true, Plaintiff fails to carry its burden.

In a case involving federal question jurisdiction, as Plaintiff asserts here, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022), cert. denied, 143 S. Ct. 577, 214 L. Ed. 2d 341 (2023).[3] Because the Lanham Act does not have a special federal rule for personal jurisdiction, courts look to the law of the forum for the governing rule. *Id.* The Illinois long-arm statute provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* To be subject to specific personal jurisdiction in a forum state, the defendant must have minimum contacts with the forum state. *Id.* Such contacts are established by purposefully directing its activities to the forum state, and the litigation must relate to those activities. *Id.* In examining "minimum contacts," the focus is on the defendant's contacts with the forum state, not the plaintiff's. *Id.* at 621. "The plaintiff cannot be the only link between the defendant and the forum" and "[t]hese same

---

[3] Plaintiff does not allege the Court has general personal jurisdiction over any Defendants. Defendants focus on the lack of specific personal jurisdiction accordingly.

72271625;1

principles apply when intentional torts are involved." *Walden v. Fiore*, 571 U.S. at 285-86, 134 S. Ct. 1115, 1122-23, 188 L. Ed. 2d 12 (2014).

Here, the Amended Complaint fails to allege facts demonstrating any of the Defendants have sufficient minimum contacts with the *State of Illinois* to establish personal jurisdiction over them. As confirmed by the attached Declaration of Patrick A. Barbour,[4] none of the Defendants reside or have their headquarters in Illinois, have any employees or a physical presence in Illinois, have traveled to Illinois for any reason related to Plaintiff, have conducted in-person training in Illinois, have marketed specifically to Illinois, have registered to do business in Illinois, have maintained a registered agent for service of process in Illinois, or have taught Illinois residents specifically. (ECF 11, ¶ 2-7; Declaration of Patrick A. Barbour, attached hereto as Exhibit A, ¶ 4-7, 9, 12-14, 18-19). The Amended Complaint does not allege any of the Defendants were present in Illinois in connection with the issues giving rise to the litigation – SearchNow and FlexForce are not even in the business of providing recruiting-related training. (Ex. A, ¶ 8).

The only allegations tenuously connecting any of the Defendants to Illinois are that Barbour breached the Terms and Conditions, which Plaintiff contends is a contract entered in the State of Illinois, that such breach constituted a fraud in Illinois, and that Plaintiff was injured in Illinois. (ECF 11, ¶ 12, 13).[5] But an "individual's contract with an out-of-state party" by itself cannot automatically establish sufficient minimum contacts in the other party's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528

---

[4] To determine whether the plaintiff has met its burden of establishing personal jurisdiction exists, a court may consider matters outside of the pleadings, including affidavits from both parties. *U.S. Glob. Corp. v. Enerco Sp. z o.o.*, No. 19-CV-02589, 2020 WL 4226685, at *4 (N.D. Ill. July 23, 2020).

[5] As discussed above, while Plaintiff's breach of contract claim and fraud claims are indiscernibly asserted against all of the Defendants, Barbour is the only party that is actually alleged to have entered into a contract with Plaintiff or to have actually made a misrepresentation.

14

72271625;1

(1985); *NBA Properties,* 46 F.4th at 621 (holding a finding of personal jurisdiction requires the "defendant's contacts be with the forum *state*, not just with *individuals within the state*"). Moreover, "mere injury to a forum resident" is not a sufficient connection to the forum. *Walden,* 571 U.S. at 290.

Notably, Barbour was not in Illinois when he agreed to the Terms and Conditions and White was not in Illinois when he attended the eSourcing eSSentials course. (Ex. A, ¶ 15-16). Additionally, the Terms and Conditions state they were to be governed by New York law, further undermining any suggestion that Barbour would reasonably expect to be haled into court in Illinois by Plaintiff in a dispute arising out of the Terms and Conditions. (ECF 11-2, ¶ 8).

In sum, the Amended Complaint contains no facts establishing Defendants engaged in purposeful activities directed at Illinois or otherwise availed themselves of the privilege of conducting business in Illinois. The facts provided by Defendants in Barbour's declaration support that Defendants lack the minimum contacts with the State of Illinois required so that haling them into court in Illinois would not offend traditional notions of fair play and substantial justice. Accordingly, this action should be dismissed against all Defendants in its entirety for lack of personal jurisdiction.

## V. CONCLUSION

For the foregoing reasons, Counts I-III, VI, and VII of Plaintiff's Amended Complaint fail to state a claim upon which relief may be granted as to any Defendants and should be dismissed with prejudice accordingly. Further, Count IV and V should be dismissed with prejudice against all Defendants except Barbour. The entire action should also be dismissed for lack of personal jurisdiction over the Defendants.

///

Respectfully submitted, this 15th day of August, 2023.

|  |  |
|---|---|
|  | */s/ Thomas G. Pasternak* |
| Akerman LLP | Thomas G. Pasternak |
| 71 South Wacker Drive | Illinois Bar No. 0607124 |
| 47th Floor | Email: thomas.pasternak@akerman.com |
| Chicago, IL 60606 |  |
| Telephone: (312) 634-5700 |  |
|  |  |
| Akerman LLP | Kamber S. Burke |
| 999 Peachtree Street, NE | Georgia Bar No. 787321 |
| Suite 1700 | Admitted *pro hac vice* |
| Atlanta, Georgia 30309 | Email: kamber.burke@akerman.com |
| Telephone: (404) 733-9809 |  |
| Facsimile: (404) 733-9909 | *Counsel for Defendants* |

72271625;1

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **Defendants' Memorandum In Support of Their Motion to Dismiss** with the Clerk of Court using the CM/ECF system and a true and correct copy of the foregoing was mailed via first class mail to the following attorneys of record:

Timothy J. Klein, IL Bar No. 6180949
LAW OFFICE OF TIMOTHY J. KLEIN
290 Springfield Dr., Suite 155
Bloomingdale, IL 60108
(630) 893-5200 Ext. 103
kleinlaw@aol.com

James D. Myers (Admitted *pro hac vice*)
MYERS LONGHOFER, LLC
7200 W. 132nd Street, Suite 190
Overland Park, KS 66213
(913) 586-6300
(913) 586-6304 – Fax
jim@myerslonghofer.com

This 15th day of August, 2023.

| | |
|---|---|
| | */s/ Thomas G. Pasternak* |
| Akerman LLP | Thomas G. Pasternak |
| 71 South Wacker Drive | Illinois Bar No. 0607124 |
| 47th Floor | Email: thomas.pasternak@akerman.com |
| Chicago, IL 60606 | |
| Telephone: (312) 634-5700 | |
| | |
| Akerman LLP | Kamber S. Burke |
| 999 Peachtree Street, NE | Georgia Bar No. 787321 |
| Suite 1700 | Admitted *pro hac vice* |
| Atlanta, Georgia 30309 | Email: kamber.burke@akerman.com |
| Telephone: (404) 733-9809 | |
| Facsimile: (404) 733-9909 | *Counsel for Defendants* |